and I understand that the government attorney is on the telephone can you hear us yes I can thank you your honor good morning good morning your honor may it please the court my name is Michael Kagan I represent the petitioner Juan Castillo this is a convention against torture case and actually if I could stop for a moment I will want to reserve two minutes of my time I apologize this is a convention against torture case and in this case both sides agree that mr. Castillo is at some risk but the Board of Immigration Appeals concluded that it was not enough and in reaching that conclusion the board made two significant legal errors in addition to distorting the record and ignoring some really key parts of the record the first legal error is demanding a certain number of confirmed cases of torture in a category that we don't think has been expected in previous torture cases but the broadest legal error that I want to spend the first part of my time talking about is the failure to aggregate risk as required by this court in Cole and in subsequent cases mr. Castillo is in a uniquely dangerous situation in El Salvador he has many risk factors some which are right on his body and others are easily discoverable he's also in danger from many parties both different parts of the government different branches of police and from two different gangs as well as from government sponsored vigilante groups these the bottom line question that has to be asked is whether this one man would be tortured which requires aggregating those risks and risk factors together but what the BIA and the IJ did was to parse them to separate them all out find flaws with each and then to say it didn't quite meet the level even doing that the BIA and IJ acknowledged that there was some significant risk a key part of that analysis particularly in the critical rejection of the conclusions of the expert witness by the immigration judge was to rely on the chain of events analysis from the that was an issue in Cole as well and it was rejected chain of events analysis is certainly appropriate in a certain type of case as it was there in a very attenuated string of circumstances but in a case like this one which is far more similar to Cole and to some others the could I just interrupt so I agree that agency needs to look at aggregate risk but I'm having trouble figuring out why you think it didn't given that the BIA said we are required to assess the aggregate aggregate risk that is taking into account all possible sources of torture and then goes on and applies that so why do you think they didn't do that well they certainly said it they said it several times so the first part of my answer to your question would be that a catch-all phrase is not enough as this court said in Cole I the argument is about the application with the reason why we need the agency to give reason to so we can look at their reasoning and when we look at their reasoning it's not aggregation of risk it's separation of risk there's no part of the BIA or the IJ decision where we can see them adding these risks together other than saying that restating the test we saying phrase you think that what they needed to do is say we think the tattoos give a 15% risk and I mean do that to put a number on each source of risk not not a number certainly not I think that would would be impossible but certainly have a discussion of what we have acknowledged that there is risk at the airport and we've acknowledged that there's risk from police we did not think that those individually reach enough but here's why we think even taken together they don't reach enough beyond that there is an overall approach that I think is encapsulated by aggregate risk which is the bottom line question with this one man in his unique situation be tortured and if you look at the way the BIA and the IJ describe Mr. Castillo key points they're not talking about Mr. Castillo they're talking about Salvadorans with tattoos or deportees from from the US so he becomes very generic and this is not a generic case this is a case about one person in a uniquely dangerous situation in El Salvador so council one of the brilliant law clerks who assisted me also happen to have a PhD in I mean it can be done that way if you're interested it's 1-3 quarters to the fourth power if you assign 25% as the risk in each of the three categories she was making the point that you could have moderate to low risk of in three separate ways but you have when you when you aggregate there is a mathematical formula to look at that but of course we're not dealing about with accurate figures but what I mean as a judge rather than a law clerk with a PhD in neuroscience we don't think that way when we're aggregating we're not thinking about did we get above 50% or not so how do we know that the IJ and the BIA didn't do what they were supposed to do here sure the premise to your question if I can say was very intimidating I think I we know throughout our legal system that we say preponderance of the evidence is 51% it's maybe there's some type of case where you actually have an expert witness with numbers that's very rare and it's very rare and torture and asylum cases as well I think what we need to look at is similar to what I said to judge freedom to judge freedom a moment ago to look at the overall approach that we want to look at how all of these risk factors and dangers work together to affect this one person rather than to separate them all out we don't need to say this one's 12% and that one was 24% and then we use that algorithm which I'll stipulate to what we need to do is see an approach of saying what is the situation of this one man not of all Salvadorans with tattoos but this one man who's got a uniquely severe criminal conviction that was been in the ms-13 gang and in another gang where we have a an expert witness who's given training to the government who was taken as credible saying the greatest danger to him is from the police we need to look at that man acknowledges that he's talking about a source of risk from authorities gang members and vigilante groups so I mean many of the things you're saying the agency needed to do it looks like it said it was doing at least and so then if you're just saying well but they didn't add it up right then I'm not quite sure how we can say that it's not enough evidence to support its decision when there's they did look at the things and came up with the idea that it's not 50% well if I can go into dangerous territory and take the math analogy but a simpler form of math I would say that this is what that what I what is in the BIA decision is similar to say elementary school student learning long division who correctly writes the division program problem I think that the BIA does that they state the summarize it correctly and they state this is going to be aggregate risk but then when they do what they do after that it's not division and how do we know that is that just because they got to the result that you don't like not at all we know that because actually there are you know many cases this court has decided where the agency simply fails to state a reason this is really not one of them there's fairly long single spaced explanations of they showed their work but their work is legally flawed that but so what is the flaw because I mean they say they're looking at aggregate risk they are listing the risks where's the flaw well they take each risk apart so it does not tell that well there what they say that this is a Salvadoran with tattoos or deportees from the u.s. and how do we know that they're not just like referring to him in shorthand in those parts when they also list these other things about him I mean I'm not sure they have to in every reference to petitioner list every factor about him or it would be a very long sentence describing him every time they reference him right there's no part in the decision I think that we are we are not supposed to imagine too much about what they were thinking beyond what they write and they've written a lot they have gone through each of these separate risks parse them said each one does not measure up nowhere do they they say they will say a summary phrase of aggregates but they never say even though we've acknowledged these fairly significant risks to him we still think that somehow this is not adding up especially given the case all that we have that there is that this is similar to cases have been decided before they found a member even in their chain of events analysis the first step is undoubtedly going to occur that he's going to attract a great deal of scrutiny even with that with cases like in regi a which was quite similar in terms of what will be discovered about someone once they attract scrutiny the facts and coal which are not entirely identical but have a lot of similarities the state the State Department reports there are quite similar in many ways there's no part in the BIA or the IJ's where we see them doing the addition and I would also see the overall approach is wrong it is parsing out all the risk factors and say well tattoos alone are not enough yeah but if if they went the other direction you'd say well they didn't they didn't take care of all of the issues that I had before them it seems like to me that if that if you take the IJ's reasoning and put it with the board that it pretty well covers it what is what is wrong with this considering the IJ's the immigration judges reasoning on the case along with what the board said to come up to a with a conclusion on the outcome of the case I think that you have to actually because I first of all the BIA explicitly adopts the IJ's factual findings and I think in other respects probably can't be understood without but you've been so far talking about what the board did and what the board didn't do but you didn't talk about the IJ which gave a very reasoned outline and so why doesn't the combination of what the IJ did in making the determination together with what the board said sufficiently cover the issues that we don't need to send it back the crux of the IJ's decision was relying on chain of events analysis which should not be applied in this way in a case where someone has multiple parties endangering them there's about two pages of the IJ's decision and it's simply applying the wrong case because it's entirely about matter of JFF not about coal and that's in addition to the IJ rejecting the expert because he thought that the expert had exaggerated with this reference to extermination group something that turned out to already be in the record and then referred to in a future State Department report which I think severely undermines that conclusion Was that your second legal argument the rejection of the expert? The rejection of the expert is really embedded in the aggregate risk question because although I know that sounds like a factual question it's the IJ reasons his decision by basically rejecting the experts conclusion and that's where he goes through repeatedly saying chain of events matter of JFF. So we've taken you over your time I'll still give you a minute for rebuttal. Okay, thank you very much your honor. Good morning your honors. Can you hear me? Yes, thank you. Good morning. Good morning may it please the court my name is Juria Jones I represent the Attorney General and again hopefully for the last time I thank you for allowing me to proceed telephonically. It was petitioners burden to show a chance greater than 50% that he will be tortured if removed and the record in this case does not compel a conclusion that petition has met that burden. What the regulations require is that the board consider all elements all evidence relevant to the probability of future torture and that evidence includes evidence of gross flagrant of mass violations and other relevant information. So petitioner misconstrues that the that the agency was demanding sort of this magical number they had to be evidence of gross flagrant of mass violations and that's exactly what the agency looked at. With regards to whether or not the board didn't correctly aggregate petitioner is correct that what Cole requires is that he must establish that taking into account all possible sources of torture he is more likely than not to be tortured by or with the consent of the government and petitioner is somehow misconstruing the agency decision they were not treated as separate divisible cat claims rather the agency looked at taking into account all the possible sources of torture that he was supposed to do this exactly but what for example in this particular case petitioners individualized evidence of torture was that he had these various tattoos that were covered and some were removed some partially removed and that he would be either former gang member deported from the United States but he himself brought forth that the sources of his torture were these four distinct individuals immigration authorities the local police vigilante groups and gang members so with his own claim the agency had to taking into account all the possible sources of torture had to evaluate his claims of where these torture where torture could possibly take place and when in that consideration the agency mentioned all four factors that he identified and they concluded that he had not shown a greater than 50% chance that he would be tortured so the agency did not air by treating each potential source individually rather it is that petitioners overall risk of being tortured and whether or not he established a greater than 50% chance that he would be torture by any of those sources that he mentioned well his he the effort was made to make that finding with the the expert that was called dr. Borman and dr. Borman made some very strong evidence presentation in his in his testimony as to what would happen if this person went back but the IJ didn't buy on to that that was I take it a credibility determination was there any if did the IJ consider anything other than dr. Borman evidence in making the determination the IJ did which was approved by the board absolutely your honor the the immigration judge as well as the board considered the country report the human rights report that was provided by provided in the record and the board even considered the most recent country report provided by have and as this court has held country reports are often considered to be decisive in whether to grant cat protection so you know they along with they they considered and petitioner haven't demonstrated that they that the eight that either the agency or the board failed to evaluate dispositive evidence or otherwise ignored or overlooked the evidence so the BIA said that the IJ found dr. Borman credible do you think that's accurate I think it's accurate for the following reason it was if there's the IJ did not say that the expert witness was not credible what they said and what the board confirmed is that a lot of the testimony that provided by him was not corroborated with objective evidence right so it sounds like the opposite right I mean it exaggerating or saying things that weren't corroborated no he didn't he he didn't say that he did he rejected him he said that dr. Borman quote exaggerated the risk of harm close quote that was the finding of the IJ right that's correct so that was based upon reviewing the record and the evidence that was provided there was nothing in the evidence the support some of his exaggerated claims that he made so so it's a little odd that the BIA then characterizes that as the IJ finding him credible isn't it up credibility probably is to have strong of a word that the board used but the the crux of the point of what the board was saying is that the exaggerated risk that was provided in his testimony there was no clear error in making that determination that he that some of it was exaggerated because the record does not reveal some of the some of his testimony so what do we do if we think some of what the IJ said about the exaggerations was wrong so in some places it seems to me that the IJ has mischaracterized some of what the experts said in rejecting it so if that's true it might be true that some of what he said isn't corroborated but other things that the IJ attributed to him I don't actually find in his report and it seems like the IJ was mischaracterizing the report in some places so if that's true what do we do but that doesn't compel the conclusion that petitioner has established a greater than 50% chance that he would be tortured I mean that is one of the of the evidence that was considered but if you think if you continue on the crux of both the immigration judges as well as the board's decision and as well as this court has established that country conditions alone and those reports can play a decisive role and so you know if being able to draw two inconsistent conclusions from evidence doesn't prevent a finding that the overall determination is supported by substantial evidence and what what in the country reports do you think is so dispositive here well as the immigration judge noted on particularly on the last page of his opinion on pay and this page I think it's page 56 of the record is that nothing in the record in the State Department reports conclude that there is a greater than 50% chance that petitioner would be tortured and as well as there's nothing in the record that petitioner has established that he individualized and particularized to him that he is more likely than not to suffer torture what particularly in there is that the and the board acknowledges that there are reports of this but there's nothing in the record demonstrating that these instances are so pervasive so gross and so mass which is what the regulations require that it has to have a finding that there's a greater than 50% chance that he would be tortured if he is removed I'm see I'm almost out of time so if there are no other questions then I'd like to this court should find that the record does not compel the conclusion that petitioner is entitled to cat protection thank you counsel thank you very much your honor in the brief time I have remaining I'd like to highlight some issues about the corroboration and about what the IJ and BIA took from the State Department report as well as some other evidence in the record at a key moment let me start with the State Department report the IJ relied quite a lot on a reference to an inconclusive ombudsman investigations I think the the more important part of the report is the executive summary which describes the civilian authorities failed at times to maintain effective control over security forces refers to high levels of impunity and abuse other human rights problems included unlawful killings and cruel treatment of security forces I think a reasonable reading of this compels thinking that what the State Department put in its summary probably should get the most evidence in an open-ended investigation also the IJ stated regarding dr. Borman describing the risk of abuse at the airport that that was not corroborated in the record that's not true on page 884 this is in the of the record that's in the Harvard report it describes violation of deportees rights occurred during the interrogation and searches that appeared to be standard element in the reception process actually there's several pages that go on there but the my point is that what the IJ took from the record in many cases just isn't either an accurate description of the sources or ignores extremely probative sources if you if you had a quarrel with the IJ that should have been raised to the board when you went to the board if you didn't raise it to the board we can't accept it did you raise that issue to the board yes yes I think and what did the what did the board say about that particular argument the board effect to some extent simply adopted the IJ's conclusions without discussing them and otherwise simply repeated the IJ's conclusion so we are we're now here I think all of this was argued extensively at the board thank you counsel thank you your honor thank you both sides for the helpful arguments the case is submitted
judges: Wallace, Friedland, Lasnik